IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHAWN WILLIAMS,

    Petitioner,

vs.

STEVE FRANKE,

    Respondent.

Case No. 6:01-cv-00812-AA
OPINION AND ORDER

---

Kristina Hellman
Assistant Federal Public Defender
101 SW Main Street, Suit 1700
Portland, Oregon 97204
    Attorney for petitioner

Ellen F. Rosenblum
Attorney General
Kristen E. Boyd
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97301
    Attorneys for respondent

AIKEN, Chief Judge:

Petitioner Shawn Williams brings this federal habeas corpus petition pursuant to 18 U.S.C. § 2254, challenging his criminal convictions on the ground that he received ineffective assistance of counsel at the trial court level. Petitioner's habeas corpus petition is DENIED and this case is DISMISSED.

## BACKGROUND

On May 22, 1992, petitioner was convicted in a jury trial for murder, felony murder, attempted murder, burglary with a firearm, tampering with a witness, and unlawful use of a weapon. These convictions were based on the following facts: in 1991, in an attempt to intimidate a witness in a separate case against him, petitioner shot into the witness' house, thereby killing her 14-month-old child. There was extensive news coverage surrounding petitioner's case that focused heavily on the death of the young victim.

On May 10, 1996, petitioner filed a pro se state post-conviction petition in Marion County Circuit Court, challenging his convictions and raising an ineffective assistance of trial counsel claim. On March 21, 1997, the circuit court granted the State of Oregon's motion to strike this claim, among others, finding that it did not comply with state pleading requirements. On January 6, 1999, the circuit court denied all post-conviction relief and petitioner appealed. Thereafter, the Oregon Court of

Page 2 - OPINION AND ORDER

Appeals affirmed the dismissal and the Oregon Supreme Court denied review. State v. Williams, 319 Or. 274, 873 P.2d 471 (1994).

On June 4, 2001, petitioner filed a pro se federal habeas corpus petition in this Court and then on February 10, 2003 filed an amended petition. Before this Court is petitioner's November 19, 2008 second amended petition, alleging an ineffective assistance of counsel claim based on the trial counsel's failure to move for a change of venue.[1]

## STANDARD

Under the Sixth Amendment, a criminal defendant is guaranteed the right to a fair trial, which includes the right to effective assistance of counsel. U.S. Const. amend. VI; Strickland v. Washington, 466 U.S. 668, 686 (1984). In order to establish ineffective assistance of counsel, a criminal defendant must show that: (1) counsel's representation was objectively unreasonable; and (2) there is a reasonable probability that, but for counsel's unreasonable errors, the result of the proceeding would have been different. Id. at 687.

## DISCUSSION

Petitioner argues that due to intense media coverage

---

[1] In his initial habeas corpus petition, petitioner also alleged that trial counsel failed to challenge the racial composition of the jury under Batson v. Kentucky, 476 U.S. 79 (1986). This claim was waived when he failed to address this claim.

Page 3 - OPINION AND ORDER

surrounding his case, it was impossible to seat an impartial local jury panel such that his trial counsel's failure to move for change of venue resulted in ineffective assistance of counsel.

A criminal defendant has the right to be tried by a panel of impartial jurors. Ainsworth v. Calderon, 138 F.3d 787, 795 (9th Cir. 1998). To support a motion to transfer venue based on lack of impartiality in the jury pool, a criminal defendant must show either presumed or actual prejudice. Gallego v. McDaniel, 124 F.3d 1065, 1070 (9th Cir. 1997). If prejudicial pre-trial publicity makes it impossible to seat an impartial jury, the court must grant a criminal defendant's motion to change venue. Id.

"Our duty as a federal court sitting in habeas corpus is to make an independent review of the record to determine whether there was such a degree of prejudice against the petitioner that a fair trial was unreasonable." Harris v. Pulley, 885 F.2d 1354, 1360 (9th Cir. 1988) (citation omitted). The reviewing court must conduct an independent examination of the exhibits containing news reports discussing the case for "volume, content, and timing to determine if they were prejudicial."[2]  Id.

---

[2] The Court is unable to make an independent review of the pre-trial news coverage and publicity; it was not included in the record because petitioner failed to adhere to state pleading requirements or file amended pleadings, and was subsequently denied the chance to orally amend them in court. See Pet'r's

Page 4 - OPINION AND ORDER

I.  Actual Prejudice

To establish actual prejudice, a criminal defendant must show that at least one juror in his case demonstrated actual hostility or partiality that could not be laid aside to impartially judge the petitioner's guilt.  Id.

Here, petitioner supplied no such evidence.  Petitioner interviewed only one seated juror; however, this juror did not recall any comments or actions during the jury selection process or trial that suggested "possible jurors [or] anyone on the jury panel had a specific partiality or hostility toward [petitioner] due to publicity about the case."  Pet'r's Supplemental Br. in Supp. of Am. Pet. ("Pet'r's Supplemental Br.") Ex. 1, at 2. Further, although individuals involved in the jury selection process were aware of the case through media reports, none recalled anything occurring during voir dire or venire that indicated an inability to impartially judge petitioner's guilt. See Pet'r's Supplemental Br. Exs. 1-5.  Mere exposure to pre-trial publicity, without more, does not establish actual prejudice, therefor petitioner's argument fails.  Harris, 885 F.2d at 1363-64.

---

Mem. in Supp. of Am. Pet. ("Am. Pet.") at 27 n.6. Because the record does not contain evidence sufficient to make an actual or presumed prejudice determination, this Court considers the media reports attached to petitioner's motion. See id. at Exs. 1-26.

Page 5 - OPINION AND ORDER

II. <u>Presumed Prejudice</u>

To establish presumed prejudice, a criminal defendant must show that the community in which "the trial was held was saturated with prejudicial and inflammatory media publicity about the crime," such that he was unable to receive a fair trial. <u>Ainsworth</u>, 138 F.3d at 795. The court considers four factors in determining presumed prejudice: (1) the size and characteristics of the community in which the crime occurred; (2) whether the news stories contained confessions or other blatantly prejudicial information that viewers could not reasonably be expected to ignore; (3) the delay between news stories and trial; and (4) whether the jury acquitted the criminal defendant of other counts. <u>Skilling v. United States</u>, 130 S.Ct. 2896, 2916 (2010); <u>Daniels v. Woodford</u>, 428 F.3d 1181, 1211 (9th Cir. 2005).

By itself, "pretrial publicity - even pervasive, adverse publicity - does not inevitably lead to an unfair trial." <u>Skilling</u>, 130 S. Ct. at 2916 (citation omitted). "Prominence does not necessarily produce prejudice, and juror impartiality . . . does not require ignorance." <u>Id.</u> at 2914-15. In fact, "scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case." <u>Irvin v. Dowd</u>, 366 U.S. 717, 722 (1961). Therefore, a presumption of prejudice exists only in extreme cases. <u>Harris</u>, 885 F.2d at 1361.

Page 6 - OPINION AND ORDER

Consideration of these factors finds no presumptive prejudice as to the trial court's venue. See Daniels, 428 F.3d at 1211. First, the size and characteristics of Multnomah County, the community in which the crime occurred, was adequately sized to seat an impartial jury. There were 448,967 people over the age of 18 in Multnomah County in 1990 and, in 1991, there were 59 homicides, including the one for which petitioner was tried. Am. Pet. Ex. 23, at 2. Accordingly, the size and characteristics of Multnomah County were such that the impact of any prejudicial media was sufficiently diluted, making it possible to seat an impartial jury. See, e.g., Gentile v. State Bar of Nev., 501 U.S. 1030, 1044 (1991) (likelihood of prejudice was reduced when venire was drawn from a population of over 600,000).

Second, although news stories about petitioner's case were not flattering, "they contained no confession or other blatantly prejudicial information of the type readers or viewers could not reasonably be expected to shut from sight." Skilling, 130 S.Ct. at 2916. Pre-trial publicity was primarily factual in nature, focusing on the procedure of the case or the gang violence epidemic in general. Pet'r's Supplemental Br. Exs. 1-2, 10-11, 15-26. Five of the 26 articles cited by petitioner named him; of those five, only three occurred prior to trial. Id. at Exs. 16, 19, 21, 25-26. In contrast, the victim was mentioned in 14

Page 7 - OPINION AND ORDER

articles. Id. at Exs. 3-15, 23. In any event, none of the articles cited by petitioner contained a confession or "evidence of the smoking-gun variety" that would inhibit jurors from impartially judging his guilt. Skilling, 130 S.Ct. at 2916.

Third, the delay between the news accounts and the underlying trial was enough to distance petitioner from these reports. To the extent any of the published articles contained prejudicial information (for example, characterizing the child as a sympathetic victim), they were printed in the days following the murder and months prior to petitioner's trial, which lessened the potential prejudicial impact. See Harris, 885 F.2d at 1362; Ainsworth, 138 F.3d at 795. The last article naming petitioner was published on December 10, 1991, six months before the trial began. Pet'r's Supplemental Br. Ex. 21. The only article cited by petitioner that was published close in time to his trial date is unrelated to his case. Id. at Ex. 24 (discussing a truce between gang members). Considering the length of time between the news reports and petitioner's trial, the pre-trial publicity did not establish a presumption of prejudice. Gentile, 501 U.S. at 1044 (exposure to prejudicial statement six months prior to trial did not result in presumed prejudice).

Finally, petitioner's jury acquitted him of three counts in the indictment, showing the ability to impartially judge his guilt. See Supplemental Exs. to Resp. to Pet'r's Am. Pet.; see

Page 8 - OPINION AND ORDER

also Skilling, 130 S.Ct. at 2916 ("[i]t would be odd . . . to presume prejudice in a case in which jurors' actions run counter to that presumption").

Considering these factors, petitioner failed to establish the existence of presumptive prejudice. Potential jurors need not come to the process without knowledge of the case. It is enough that "the juror[s] can lay aside [their] impression or opinion[s] and render a verdict based on the evidence presented in court." Skilling, 130 S.Ct. at 2925 (citation omitted). Although there was pre-trial publicity, it did not amount to a large "wave of public passion." Calderon, 138 F.3d at 795 (citation omitted). Moreover, the individuals involved in voir dire and venire did not notice anything during the process that suggested an inability to impartially judge petitioner's guilt. Therefore, petitioner's trial counsel's representation was objectively reasonable.

Even if counsel had successfully moved for a change of venue, petitioner failed to show that the result of the proceeding would have been different. Strickland, 466 U.S. at 696. In other words, a criminal defendant cannot simply conclude that the failure to file a motion to change venue would have affected the outcome of his case; rather, he must show that the jury would have had reasonable doubt as to his guilt. Id. at 695. Petitioner reiterates his allegations of actual and

Page 9 - OPINION AND ORDER

presumed prejudice, however provides no argument or evidence that, but for his trial counsel's errors, the jury would have reached a different verdict. See Pet'r's Supplemental Br. at 11-12. Nonetheless, taking into consideration the totality of the evidence before the jury, there is no indication they would have arrived at a different result.

In sum, petitioner failed to make the requisite showing that trial counsel's performance was deficient resulting in prejudice, or that the trial outcome would have been different had a motion to change venue been filed. Therefor, petitioner's ineffectiveness claim is denied. Strickland, 466 U.S. at 700.

## CONCLUSION

For the foregoing reasons, petitioner's Petition for a Writ of Habeas Corpus (doc. 1) is DENIED and this case is DISMISSED. A Certificate of Appealability shall be issued as petitioner has made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

Dated this 22nd day of July 2013.

_____
Ann Aiken
United State District Judge

Page 10 - OPINION AND ORDER